# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

STEVEN M. CASAUS,

       Plaintiff,

vs.                                                                 Civil No. 98-1184 LH/WWD

KENNETH S. APFEL,
COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

       Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

    1.  This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed September 29, 1999 **[docket # 12]**. The Commissioner denied Plaintiff's request for Child's Insurance Benefits and Supplemental Security Income ("SSI") benefits. Plaintiff is currently age 27 and alleges a disability commencing August 1, 1990 due to depression, explosive personality, mood swings and schizophrenia.

    2.  Plaintiff raises the following allegations of error with respect to the Administrative Law Judge's ("ALJ") decision: (1) the findings that neither Plaintiff's psychological impairment nor his hepatitis C are severe are not supported by substantial evidence and are contrary to law; (2) the ALJ erroneously relied on an expert opinion that is contrary to well-established medical doctrine and opinion and is not supported by substantial evidence; and (3) the findings regarding materiality of the substance abuse are ill-timed, and are not supported by substantial evidence.

    3.  After reviewing the pleadings and the record itself, I find that the procedural posture of this case, which I set out here, obviates the need to examine the above alleged errors.

4. On April 20, 1994, Plaintiff filed prior disability applications for SSI and Child's Insurance Benefits alleging an onset date of August 1, 1990.[1] The applications were denied on May 9, 1995 and affirmed by the Appeals Council on July 21, 1995. On appeal in federal district court, the case was remanded upon unopposed motion by the Commissioner. Tr. at 327-28. Following a hearing on remand, a "partially favorable" decision was issued by the ALJ who concluded that Plaintiff had been disabled since April 20, 1994 but that he was ineligible for benefits after January 1, 1997 based on the determination he was unable to work because of alcohol and drug abuse. Tr. at 353, 355.[2] In his decision ALJ Robert L. Schatz amended the onset date from August 1, 1990 to April 22, 1994 "to conform the pleading to the proof." Tr. at 355. Plaintiff did not appeal this decision to the Appeals Council.

5. Meanwhile, on November 6, 1995, after the administrative decision became final but prior to the federal court remand order, Plaintiff filed a new application for benefits. Tr. at 60, 105, 333. For this second application, the onset date was amended to May 10, 1995 in order not to overlap the time period that was adjudicated by the first applications which were then pending on appeal in federal district court. Tr. at 59, 60, 334. ALJ T.Adrian Pedron denied this application in December 1996, finding that Plaintiff did not show that his mental impairment or his hepatitis C

---

[1] The applications were filed on May 6, 1994 with a protective filing date of April 20, 1994. Tr. at 333, 345.

[2] The notice of award sent to Plaintiff on August 3, 1998, reflects that he would receive monthly benefits from April 1994 through December 1996. Tr. at 341. On March 29, 1996, Congress amended provisions of both Title II and Title XVI to provide that an individual is not eligible for benefits after January 1, 1997 and is not considered disabled if alcoholism or drug addiction is found to be a contributing factor material to the determination of disability. Pub.L. 104-121, § 150(a)(1), (b)(1) (codified as amended at 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)(1997)).

were severe impairments under the social security regulations. Tr. 13-19.

6. On August 20, 1998, the Appeals Council denied Plaintiff's request for review. The Appeals Council specifically noted that Plaintiff's failure to appeal the February 1998 ALJ decision (the partially favorable decision on the first application) left "no unadjudicated issue" for review since both sets of applications were based on the same issues and the same time period. Tr. at 7.

7. What this leaves is a rather convoluted procedural history where a partially favorable decision on the earlier applications became final *after* the later application (the one presently appealed here) was denied. The Commissioner's position echoes the decision of the Appeals Council. Although the date of onset for the second application was amended to May 10, 1995, Plaintiff received benefits by virtue of the February 1998 decision on the first set of applications from April 20, 1994 through December 31, 1996. Tr. at 341, 356. Thus, the Commissioner argues, because Plaintiff has already adjudicated the same facts and issues for the same time period as in the earlier application, he has received all the benefits he is entitled to during that period.

8. I have considered Plaintiff's arguments rebutting the Commissioner's position, and find that none of them have merit. Plaintiff argues that the intended onset date for the second application should be considered to be February 13, 1998, which is one day following ALJ Schatz' partially favorable decision because it was Plaintiff's intent to have the two applications cover separate time periods.[3] However, Plaintiff is asking the Court to go outside of the

---

[3] It's obvious that Plaintiff could not have known about the February 12, 1998 decision at the time ALJ Pedron's decision was issued in December of 1996. At the same time, I note that although the February 13, 1998 date is conceded in Plaintiff's reply brief, the alleged date of onset was stated as August 1, 1990 in the memorandum brief.

3

circumscribed time period under review, since it goes beyond the date of the final decision in the present case (December 1996). See Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir. 1991)(proffered evidence relate to the time period for which the benefits were denied).

9. ALJ Pedron found that Plaintiff was not eligible to receive benefits because any significant work-related functional restrictions were caused by his alcohol and drug abuse. Tr. at 18. Even ALJ Schatz' decision, which awarded partial benefits until December 1996 found that Plaintiff was precluded from receiving benefits after this time for the same reason.[4] There is no new evidence in the record subsequent to the time period addressed by both decisions which would have changed the Commissioner's decision for the period of time after February 1998, even if such evidence were reviewable by this Court.

10. Therefore, I find that Plaintiff seeks review of a decision which covers the same period of time, and the same facts and issues that have already been adjudicated and for which he has already received benefits. I also agree with the Commissioner that if Plaintiff contends that he became disabled after the February 12, 1998 decision, his recourse is to file a new claim for benefits. See Johnson v. Heckler, 767 F.2d 180, 183 (5th Cir. 1985).

11. Plaintiff also argues that review of ALJ Pedron's decision should not be precluded because of the decision not to appeal the same issues when they became final in the February 1998 decision on the first application. He explains that the Appeals Council could have reversed the favorable parts of that decision as well as the unfavorable parts, leaving Plaintiff at risk of losing

---

[4] ALJ Schatz' decision is not under review by this Court, but is mentioned by way of demonstrating the basis for both sets of findings concerning Plaintiff's drug and alcohol abuse. Because the earlier ALJ decision was "finally adjudicated" prior to March 29, 1996, the new amendments relating to drug and alcohol abuse were subject to the old regulations (until January 1, 1997). P.L. 104-121 §§ 105(b)(5)(A).

4

his closed period of benefits. While the rationale underlying this legal strategy is accurate, it is not a sufficient basis for an appeal *nunc pro tunc* (so to speak) merely to allow relitigation of issues until Plaintiff feels he has finally obtained the desired results.

12. As a last argument, Plaintiff contends that there was no evidence that ALJ Schatz' decision on the first set of applications considered or discussed the psychological reports from either Drs. Balcazar and Bogost. Aside from the fact that Plaintiff inappropriately uses the present appeal forum based on ALJ Pedron's decision to challenge an earlier decision which was *not* appealed (ALJ Schatz' remand decision), I find that there is no merit to this argument, regardless of which decision is reviewed.

13. Use of the doctors' reports to establish that Plaintiff was disabled is pointless since both ALJ's made initial determinations that Plaintiff was disabled. The critical inquiry, then, relates to the role of Plaintiff's alcohol and drug abuse in precluding him from receiving benefits. For this purpose, neither doctor's report helps Plaintiff's position. Although ALJ Schatz makes no mention of either report in his decision, ALJ Pedron did expressly consider both doctors' reports.[5] He noted that Dr. Bogost gave "little, if any, consideration during a [July 1995 evaluation] to the claimant's ongoing drug and alcohol abuse, and whether this behavior could account for any of his psychological signs or symptoms." Tr. at 15. He also noted that Dr. Balcazar felt that Plaintiff

---

[5] In one of his allegations of error, Plaintiff contends that Dr. Ewing's testimony that his mental impairments (dysthymia, personality disorder and sociopathic disorder) are not disabling are invalid, pointing to § 12.04 of the listed impairments. I do not find Plaintiff's arguments regarding Dr. Ewing's testimony convincing. First, the fact that an impairment is represented in the list of impairments does not in itself mean that a claimant is disabled unless Parts A and B of the listing are satisfied, which has not been shown here. Second, ALJ Pedron examined Dr. Ewing's testimony against the reports of Drs. Bogost and Balcazar and found them to be consistent in their conclusions that Plaintiff's inability to work was a result of his alcohol and drug abuse and not his mental impairments. Tr. at 16.

would be able to perform unskilled work except for his polysubstance abuse habits, Tr. at 16.[6]

14.  While Plaintiff is correct that ALJ Schatz' February 1998 decision does not mention either doctor's report, it is of little consequence since the thrust of the findings in these reports with regard to his polysubstance abuse erodes Plaintiff's position.  Further, any alleged error based on that decision is unreviewable because it was never appealed.

15.  In sum, I find that the errors alleged by Plaintiff regarding ALJ Pedron's decision are unreviewable because these issues have been raised and adjudicated in Plaintiff's earlier set of applications and because Plaintiff has already received all the benefits to which he is entitled for the relevant time period.  Nor is it appropriate to undertake here for the first time a determination of disability based on an alleged onset date of February 13, 1998 where the Commissioner has not previously issued a decision for that time period and where such a record is not before the Court.

## **Recommendation**

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 12]** be DENIED and that this cause of action DISMISSED.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

*[signature]*
UNITED STATES MAGISTRATE JUDGE

---

[6] Dr. Bogost's report stated that "based on Mr. Casaus' lifestyle during the past year, it would appear that this man appears capable of securing gainful employment in the community." Tr. at 218.  Dr. Balcazar opined that Plaintiff could have "adequate judgment to plan a work sequence" but that [h]is drinking and use of drugs certainly interfere with those functions." Tr. at 213.

6